# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| THOMAS SHEA,<br><br>                    Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA, *et al.*,<br><br>                    Defendants. | 3:17-cv-00405-RCJ-VPC<br><br>**REPORT AND RECOMMENDATION**<br>**OF U.S. MAGISTRATE JUDGE** |

This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge. This action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is Thomas Shea's ("plaintiff") application to proceed *in forma pauperis* (ECF No. 1) and *pro se* complaint (ECF No. 1-1). Having reviewed all documents, the court recommends that the application to proceed *in forma pauperis* be granted, and that this action be dismissed as detailed herein.

## I.     *IN FORMA PAUPERIS* APPLICATION

As set forth in 28 U.S.C. § 1915(a), the court may authorize a plaintiff to proceed in forma pauperis if he or she is unable to pay the prescribed court fees. The plaintiff need not "be absolutely destitute to enjoy the benefits of the statute." *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948). Based on the financial information provided in his application to proceed *in forma pauperis*, plaintiff is unable to pay the filing fee in this matter. (*See* ECF No. 1.) The court therefore recommends that the application be granted.

## II.     LEGAL STANDARD

Inmate civil rights complaints are governed by 28 U.S.C. § 1915A. Section 1915A provides, in relevant part, that "the court shall dismiss the case at any time if the court determines that . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). A complaint is frivolous when "it lacks an arguable basis in either

law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). This includes claims based on legal conclusions that are untenable (e.g., claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful factual allegations (e.g., delusional scenarios). *Id.* at 327–28; *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991). Dismissal for failure to state a claim under § 1915A incorporates the same standard applied in the context of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012), which requires dismissal where the complaint fails to "state a claim for relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

The complaint is construed in a light most favorable to the plaintiff. *Chubb Custom Ins. Co. v. Space Systems/Loral Inc.*, 710 F.3d 946, 956 (9th Cir. 2013). The court must accept as true all well-pled factual allegations, set aside legal conclusions, and verify that the factual allegations state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The complaint need not contain detailed factual allegations, but must offer more than "a formulaic recitation of the elements of a cause of action" and "raise a right to relief above a speculative level." *Twombly*, 550 U.S. at 555. Particular care is taken in reviewing the pleadings of a *pro se* party, for a more forgiving standard applies to litigants not represented by counsel. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). Still, a liberal construction may not be used to supply an essential element of the claim not initially pled. *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992). If dismissal is appropriate, a *pro se* plaintiff should be given leave to amend the complaint and notice of its deficiencies, unless it is clear that those deficiencies cannot be cured. *Cato v. United States*, 70 F.3d 1103, 1107 (9th Cir. 1995).

### III.  DISCUSSION

Proceeding *pro se* and pursuant to 42 U.S.C. § 1983, plaintiff brings a number of civil rights claims against the United States and Washoe County Sheriff Michael Haley. (*Id.* at 1-2.) Plaintiff's allegations are difficult to parse, but it appears that his claims concern his incarceration at Washoe County Jail, as well as his previous criminal and civil cases. (ECF No. 1-1.)

### A. Factual Allegations

First, plaintiff alleges that he was maliciously held in the Washoe County Jail Segregated Housing Unit ("the hole") because he was representing himself and "knew too much about the law." (*Id.* at 2.) He was not permitted to mail legal documents to the court during this time. (*Id.*) He claims that defendant's actions violated his First Amendment rights and seeks $20,000. (*Id.*)

Second, plaintiff claims that he was subjected to cruel and unusual punishment during the nine months he spent in the hole. (*Id.*) Specifically, "his diet was discontinued and replaced 3 times showing his need for a more sustainable diet …" (*Id.*) He suffered "acute weight loss" during this time. (*Id.*) Additionally, the lights in the hole were fully illuminated at all hours of the day. (*Id.* at 3.) He claims that "the combined torture affected [his] pro per civil cases and his overall life in general" and seeks "$1000 per day of the time spend in the hole at Washoe County Jail." (*Id.*)

Third, plaintiff claims that defendants denied his First Amendment right to access the courts during his incarceration. (*Id.* at 2.) According to plaintiff, defendants destroyed his legal mail and denied over fifty of his grievances. (*Id.*) He also references, without further explanation, "attorney client violations." (*Id.*)

Fourth, plaintiff claims that defendants confiscated his cell phone and "unlawfully accessed [it] beyond the password" in violation of the Fourth Amendment. (*id.* at 1-2.) As a result, his email and other accounts have been "compromised leading to quid pro quo bribery" in a separate action plaintiff has filed in this court. (*Id.* at 3.) He requests $150 in compensatory damages for his cell phone and $20,000 in declaratory relief. (*Id.*) Defendants also allegedly searched plaintiff's cell and seized his legal documents because plaintiff was "acting pro per in civil cases." (*Id.*) Plaintiff claims that this is a separate violation of the Fourth Amendment and requests "the sum certain amount of $1." (*Id.* at 3.)

Fifth, plaintiff alleges that security guards of the Second Judicial District Court "defamed [plaintiff] before a jury trial …." (*Id.* at 2.) This defamation was significant enough that the jury "complain[ed] to the judge for that trial" and ultimately convicted plaintiff. (*Id.*) Plaintiff claims that a connection" exists between defendants and the security guards who defamed plaintiff, and

3

seeks from defendants "$1,000 per day of incarceration following the jury being infected ...." (*Id.* at 1-2.)

Finally, plaintiff claims that defendants violated his due process rights by denying over fifty of his grievances. (*Id.* at 4.) According to plaintiff, the grievances addressed the injuries contained in this complaint, and the fact that he could not correct any of these injuries by way of grievance is evidence that he was not provided adequate due process of law. (*Id.*) He seeks the "maximum relief" of $1.

### B. United States Is Entitled to Sovereign Immunity

As an initial matter, plaintiff's claims brought against the United States must be dismissed. The United States is generally immune from suit, and can only be sued to the extent that it has waived its sovereign immunity. *Graham v. United States*, 96 F.3d 446, 448 (9th Cir. 1996); *United States v. Orleans*, 425 U.S. 807, 814 (1976). While plaintiff's constitutional claims may be actionable against federal officers, sovereign immunity bars a *Bivens* action against the United States or its agencies. *FDIC v. Meyer*, 510 U.S. 471, 485-86 (1994). Plaintiff fails to identify any federal actors in his complaint. Furthermore, plaintiff's complaint does not suggest federal action as the events underlying plaintiff's claims occurred in state institutions. The court is unable to redirect his constitutional claims against the United States in order to avoid dismissal.

Additionally, the court lacks jurisdiction over any possible tort claims plaintiff may have against the United States. The Federal Torts Claim Act ("FTCA") waives the United States sovereign immunity "for tort claims arising out of the negligent conduct of government employees and agencies in circumstances where the United States, if a private person, would be liable to the claimant" under state law. *Green v. United States*, 630 F.3d 1245, 1249 (9th Cir. 2011); 28 U.S.C § 1346(b)(1). However, the FTCA requires, as a prerequisite to jurisdiction, that the plaintiff first present the claim to the appropriate federal agency, and that the claim be "finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a). Plaintiff bears the initial burden of establishing subject matter jurisdiction under the FTCA. *Young v. United States*, 769 F.3d 1047, 1052 (9th Cir. 2014).

Plaintiff fails to carry his burden of pleading that he has presented his claim to the appropriate federal agency and exhausted his available administrative remedies. *Vacek v. U.S. Postal Serv.*, 447 F.3d 1248, 1250 (9th Cir. 2006) (noting that the Ninth Circuit has "repeatedly held" that exhaustion is to be interpreted strictly). More fundamentally, the complaint does not present a tort actionable under the FTCA. *See* 28 U.S.C. § 2680(b), (c), (h) (2012) (listing limitations on claims actionable under the FTCA, including actions based on, *inter alia*, loss of postal matter, detention of property, slander, and false imprisonment). Finally, plaintiff's failure to identify any federal actors or agencies responsible for harming him is fatal to his claim under the FTCA. 28 U.S.C. § 1346(b) (2012). Accordingly, the court recommends that the United States be dismissed as a defendant from this action. Given the United States' sovereign immunity and the lack of any federal action, amendment would be futile. Dismissal should be with prejudice. *Cato*, 70 F.3d at 1107.

**C. Sheriff Michael Haley**

*1. First Amendment Retaliation*

"The First Amendment guarantees a prisoner a right to seek redress of grievances from prison authorities as well as a right of meaningful access to the courts." *Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015); *see Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005). "Retaliation against prisoners for their exercise of this right is itself a constitutional violation, and prohibited as a matter of 'clearly established law.'" *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009) (citing *Rhodes*, 408 F.3d at 567 and *Pratt v. Rowland*, 65 F.3d 802, 806 & n.4 (9th Cir. 1995)). There are five basic elements for a viable claim of First Amendment retaliation in the prison context: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. *Brodheim*, 584 F.3d at 1269.

Plaintiff's allegations meet the elements of a First Amendment retaliation claim. Plaintiff alleges that Sheriff Haley engaged in three separate adverse actions against plaintiff: Sheriff Haley placed plaintiff in the hole, prevented him from mailing legal documents to the court, and

destroyed his legal mail. (ECF No. 101 at 2.) Plaintiff further alleges that Sheriff Haley acted because plaintiff "was representing himself" and "knew too much about the law," which facially constitutes impermissible retaliation for protected court-related activity. (*Id.* at 2.) *Rizzo v. Dawson*, 778 F.2d 527, 531-32 (9th Cir. 1985) (assisting other inmates in legal matters and pursuing legal actions in court are speech protected by the First Amendment). Finally, Sheriff Haley's alleged interference with plaintiff's legal documents chilled plaintiff's exercise of his First Amendment rights, and these actions do not appear to advance a legitimate penological goal as stated. Thus, the court finds that plaintiff states a cognizable First Amendment retaliation claim against Sheriff Haley.

### 2. *Eighth Amendment Conditions of Confinement*

The Eighth Amendment imposes a duty on prison officials to "provide humane conditions of confinement." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Conditions of confinement may, consistent with the Constitution, be restrictive and harsh. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) However, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care." *Id.* In evaluating a prisoner's claim, courts consider (1) whether prison guards acted "with a sufficiently culpable state of mind" and (2) whether the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation. *Hudson*, 503 U.S. at 8.

When determining whether the conditions of confinement are sufficiently harmful, the court must analyze each condition separately to determine whether that specific condition violates the Eighth Amendment. *See Toussaint*, 801 F.2d 1080, 1107 (1986). "Some conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise — for example, a low cell temperature at night combined with a failure to issue blankets." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991); *see also Thomas v. Ponder*, 611 F.3d 1144, 1151 (9th Cir. 2010).

      First, Plaintiff alleges that he was subjected to an unsustainable diet that caused repeated, acute weight loss during the nine months he spent in the hole. (ECF No. 1-1 at 2-4.) As evidence of the insufficiency of the food, plaintiff notes that his meals were discontinued and replaced three times. (*Id.*) The deprivation of nutritious food may be sufficiently harmful under the Eighth Amendment where it causes weight loss detrimental to a prisoner's health. *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993) (food must be adequate to maintain health). However, it is not clear from his passive and incomplete sentences whether he is accusing Sheriff Haley of violating the Eighth Amendment. Even if he is, the fact that his meals were replaced three times in response to his weight loss impedes a finding that prison officials "[knew] of and disregarded an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837 (noting that prison officials may avoid liability under the Eighth Amendment by responding reasonably, albeit unsuccessfully, to the risk of harm to plaintiff). The court recommends that plaintiff's claim be dismissed without prejudice, with leave to amend for plaintiff to provide further factual detail.

      Second, plaintiff alleges that the lights in the hole were fully illuminated at all hours of the day. (ECF No. 101 at 3.) "'Adequate lighting is one of the fundamental attributes of "adequate shelter" required by the Eighth Amendment.' Moreover, '[t]here is no legitimate penological justification for requiring [inmates] to suffer physical and psychological harm by living in constant illumination.'" *Keenan v. Hall*, 83 F.3d 1083, 1090 (9th Cir. 1996) (citations omitted), *amended by* 135 F.3d 1318 (9th Cir. 1998). Again, plaintiff fails to identify the prison officials responsible, and fails to allege facts suggesting that prison officials were aware of a serious risk of harm to plaintiff. Further, his allegations that the lighting in the hole was "torture" and affected his "overall life in general" are too vague for the court to find that plaintiff suffered sufficient psychological or physical harm to support an Eighth Amendment claim. *See id.* (noting that plaintiff complained of "grave sleeping problems" and other psychological harm); *Hampton v. Ryan*, 288 Fed. Appx. 404, 405 (9th Cir. 2008) (plaintiff "failed to raise triable issue of fact as to whether the lighting level in his cell caused him to suffer psychological or physical harm"). Plaintiff's Eighth Amendment claim on this basis is dismissed without prejudice, with leave to amend to allow plaintiff to state facts showing that an identified actor maintained continuous

1  lighting "with a sufficiently culpable state of mind," which caused a particular physical or mental
2  harm. *Hudson*, 503 U.S. at 8.

         3. *Right of Access to Courts*

4      Prisoners have a constitutional right to meaningful access to the courts. *Bounds v. Smith*,
5  430 U.S. 817, 821 (1987). A deliberate delay of or tampering with legal mail states a cognizable
6  claim for denial of access to the courts where the violations adversely affected legal proceedings.
7  *Jackson v. Procunier*, 789 F.2d 307, 311–12 (5th Cir. 1986). To prevail on a claim, however, a
8  plaintiff must demonstrate that the interference was done intentionally and with an improper
9  motive, *see Smith v. Maschner*, 889 F.2d 940, 944 (10th Cir. 1990), and that a "nonfrivolous"
10 underlying claim was frustrated or impeded as a result, *Lewis v. Casey*, 518 U.S. 343, 354–55
11 (1996). "[A]n isolated incident of mail tampering is usually insufficient to establish a
12 constitutional violation." *Davis v. Goord*, 320 F.3d 345, 351 (2nd Cir. 2003).

13     Here, plaintiff's allegations are too vague to support an access to courts claim. Plaintiff
14 states that defendants destroyed his legal mail, seized his legal documents from his cell, and
15 engaged in "attorney client violations." (*See* ECF No. 1-1 at 2). He does not describe the
16 specific pieces of mail that were affected or the underlying claim to which they relate. Nor does
17 offer any detail about the nature of the alleged attorney-client violations, or the impact of such a
18 violation on a nonfrivolous claim. *Lewis*, 518 U.S. at 354–55. Finally, the denial of a grievance
19 does not constitute a denial of access to courts. The court recommends that plaintiff's access to
20 courts claim be dismissed, with leave to amend to provide further detail.

         4. *Fourth Amendment Unreasonable Search and Seizure*
            i. *Cell Phone*

23     The Fourth Amendment protects the rights of the people "to be secure in their persons,
24 houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV.
25 Its protection extends to the digital data contained on a person's cellphone and requires the
26 government to obtain a warrant before electronically accessing and searching the cellphone.
27 *Riley v. California*, 134 S. Ct. 2473, 2485-87 (2014). However, the protection applies only if a
28 person has a reasonable expectation of privacy in not having his words or conversation

overheard. *See Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507 (1967). Prison inmates do not appear to have a reasonable expectation of privacy for communications made by cellular telephone during their incarceration. *See United States v. York*, No. 1:16-CR-00069-LJO-SKO-11, 2017 WL 5068143, at *4 (E.D. Cal. Sept. 29, 2017), *reconsideration denied*, No. 1:16-CR-00069-LJO-SKO, 2017 WL 4959244 (E.D. Cal. Nov. 1, 2017) (noting that no court has found a privacy interest in communications made over contraband cell phones).

Plaintiff seeks to hold defendants liable for initially confiscating his phone and "unlawfully access[ing] [it] beyond the password," because that allowed other, unidentified governmental actors to hack his email account and other digital information. (*Id.*) Plaintiff's allegations offer insufficient detail for the court to determine whether a Fourth Amendment violation has occurred. Nevada Department of Corrections ("NDOC") prohibits prisoners from possessing cellphones. *See* NEVADA DEPT. OF CORR., ADMINISTRATIVE REG. 422 (2016). Thus, the initial confiscation of his phone during his incarceration would pose no constitutional issues. Furthermore, he has no reasonable expectation of privacy in any communications made while he is in prison, so a search of emails he sent during his incarceration would not violate the Fourth Amendment. However, plaintiff may have a claim for searches of his electronic communications taking place before, or after, his imprisonment. *Riley*, 134 S. Ct. at 2485. Plaintiff's Fourth Amendment claim should be dismissed without prejudice, with leave to amend to cure the deficiencies noted.

    *ii. Cell*

Defendants also allegedly searched plaintiff's cell and seized his legal documents because plaintiff was "acting pro per in civil cases." (*Id.*) Plaintiff claims that this is a separate violation of the Fourth Amendment and requests "the sum certain amount of $1." (*Id.* at 3.)

Prisoners have no Fourth Amendment right of privacy in their cells. *Seaton v. Mayberg*, 610 F.3d 530, 534 (9th Cir. 2010) (recognizing a right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the continual surveillance of inmates and their cells required to ensure security and internal order); *see Block v. Rutherford*, 468 U.S. 576 (1984) (random cell searches did not violate constitutional rights of pre-trial detainees). Since

prisoners do not have legitimate privacy interests in their cells, seizures of property found within the cell do not offend the Fourth Amendment. *Hudson v. Palmer*, 468 U.S. 517, 533-34 (1984) (destruction of plaintiff's personal property during random cell search did not violate Fourth Amendment). Thus, plaintiff's claim is not cognizable under the Fourth Amendment as a matter of law. It is clear that plaintiff is unable to provide additional facts entitling him to relief on this claim. The court recommends that his claim be dismissed with prejudice. *Cato*, 70 F.3d. at 1107.

Dismissal of plaintiff's Fourth Amendment claim does nothing to abridge his ability to remedy the seizure of his property by way of his First Amendment retaliation and access to court claim, "state tort and common-law remedies," or other legal sources of redress. *See id.* (holding that lack of privacy interest in cell does not "mean that prison attendants can ride roughshod over inmates' property rights with impunity.")

### 5. Sixth Amendment Right to Fair Trial

Plaintiff alleges that security guards of the Second Judicial District Court "defamed [plaintiff] before a jury trial," which caused the jury to convict plaintiff. (ECF No. 1-1 at 2-3.) This claim is barred by *Heck v. Humphrey*, 512 U.S. 477, 483-87 (1994), because a favorable finding would necessarily imply the invalidity of plaintiff's conviction. *Id.* His sole federal relief at this juncture is a claim petition for habeas corpus. *Id.* The court notes that plaintiff does not explain how Sheriff Haley could be held liable for the actions of the security guards who defamed plaintiff. (*Id.* at 1-2.) The court recommends that this claim be dismissed without prejudice.

### 6. Fifth Amendment Takings Clause

The Takings Clause of the Fifth Amendment, made applicable to the states through the Fourteenth, *see Chicago, B. & Q.R. Co. v. Chicago*, 166 U.S. 226 (1897), provides that private property shall not "be taken for public use, without just compensation." U.S. CONST. amend. V. Plaintiff claims that the confiscation and unauthorized access of his cell phone meets this definition. (*Id.* at 3.) However, "property seized and retained pursuant to the police power," as is likely the case here, "is not taken for a 'public use' in the context of the Takings Clause." *AmeriSource Corp. v. United States*, 525 F.3d 1149, 1154 (Fed. Cir. 2008). The court recommends that plaintiff's claim be dismissed with prejudice as amendment would be futile.

### 7. *Fourteenth Amendment Due Process Clause*

The Due Process Clause of the Fourteenth Amendment prohibits states from depriving individuals of "life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. Courts analyze procedural due process claims in two parts. First, the court must determine whether the plaintiff possessed a protected interest. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). If so, the court compares the required level of process with the procedures the defendant observed. *Brown v. Ore. Dep't of Corrs.*, 751 F.3d 983, 987 (9th Cir. 2014). To prevail on a claim, plaintiff must have a protected liberty interest, and the defendant's procedures must be constitutionally inadequate. *Id.*

Plaintiff fails to state a due process claim. While plaintiff claims that defendants denied over fifty of his grievances, he does not identify a protected interest nor describe how a government official deprived such interest without constitutionally-mandated procedural protections. (*Id.* at 4.) Without more, the court is unable to determine what process plaintiff was due. The court recommends that plaintiff's due process claim be dismissed without prejudice, with leave to amend to provide more factual detail, if applicable.

### IV. CONCLUSION

The court finds that the United States is immune from suit, and recommends that plaintiff's claims against the United States be dismissed with prejudice. Furthermore, the court finds that plaintiff states a cognizable First Amendment retaliation claim against Sheriff Haley. For the reasons articulated above, plaintiff's remaining claims fail to state claims on which relief can be granted.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of judgment.

## V.    RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that plaintiff's applications to proceed *in forma pauperis* (ECF No. 1) be **GRANTED**;

**IT IS FURTHER RECOMMENDED** that the Clerk **FILE** plaintiff's complaint (ECF No. 1-1);

**IT IS FURTHER RECOMMENDED** that the claims against the United States be **DISMISSED WITH PREJUDICE**;

**IT IS FURTHER RECOMMENDED** that plaintiff's Fourth Amendment claim for seizure of his legal documents be **DISMISSED WITH PREJUDICE**;

**IT IS FURTHER RECOMMENDED** that plaintiff's Fifth Amendment Takings Clause claim be **DISMISSED WITH PREJUDICE**;

**IT IS FURTHER RECOMMENDED** that plaintiff's Sixth Amendment right to fair trial claim be **DISMISSED WITHOUT PREJUDICE**;

**IT IS FURTHER RECOMMENDED** that the complaint be **DISMISSED WITHOUT PREJUDICE, WITH LEAVE TO AMEND** as to all remaining claims;

**IT IS FURTHER ORDERED** that plaintiff shall have **thirty (30) days** from the date that this order is entered to file an amended complaint remedying, if possible, the defects identified above. The amended complaint must be a complete document in and of itself, and will supersede the original complaint in its entirety. Any allegations, parties, or requests for relief from prior papers that are not carried forward in the amended complaint will no longer be before the court. Plaintiff is advised that if he does not file an amended complaint within the specified time period, the court will recommend dismissal of his complaint WITH PREJUDICE. Plaintiff shall clearly title the amended complaint by placing the words "FIRST AMENDED" immediately above "Civil Rights Complaint Pursuant to 42 U.S.C. § 1983" on page 1 in the caption, and plaintiff shall place the case number, 3:17-cv-405-RCJ-VPC, above the words "FIRST AMENDED COMPLAINT."

DATED: April 16, 2018

_____
UNITED STATES MAGISTRATE JUDGE